UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS LIBERTY PAC, a political action committee registered with the Illinois State Board of Elections, EDGAR BACHRACH, and KYLE McCARTER, | ) | 12 C 5811 |
| Plaintiffs, | ) | Judge Feinerman |
| vs. | ) | |
| LISA M. MADIGAN, Attorney General of the State of Illinois, WILLIAM McGUFFAGE, Chairman of the Illinois State Board of Elections, JESSE R. SMART, Vice-Chairman of the Illinois State Board of Elections, HAROLD D. BYERS, Member of the Illinois State Board of Elections, BETTY J. COFFRIN, Member of the Illinois State Board of Elections, ERNEST L. GOWEN, Member of the Illinois State Board of Elections, JUDITH C. RICE, Member of the Illinois State Board of Elections, BRYAN A. SCHNEIDER, Member of the Illinois State Board of Elections, and CHARLES W. SCHOLZ, Member of the Illinois State Board of Elections, all in their official capacities, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Illinois Liberty PAC, Edgar Bachrach, and Kyle McCarter bring this suit under 42 U.S.C. § 1983 against the Attorney General of Illinois and the Chairman, Vice-Chairman, and members of the Illinois State Board of Elections, all in their official capacities, alleging that certain contribution limits imposed by the Illinois Disclosure and Regulation of Campaign Contribution and Expenditures Act, 10 ILCS 5/9-1 *et seq.*, violate the First Amendment and the Fourteenth Amendment's Equal Protection Clause. Doc. 65. Shortly after suit was filed, Illinois Liberty and Bachrach, the only plaintiffs at the time, moved for a preliminary injunction on their first amended complaint. Doc. 32. The court denied the motion, reasoning that Plaintiffs had a low

likelihood of success on the merits. Docs. 43-44, reported at 902 F. Supp. 2d 1113 (N.D. Ill. 2012). The Seventh Circuit summarily affirmed, stating: "We agree with the district court that [Plaintiffs] have not shown that they are likely to succeed on the merits of their challenge to contribution limits in 10 ILCS 5/9-8.5." 2012 WL 5259036 (7th Cir. Oct. 24, 2012).

Plaintiffs sought and were granted leave to file a second amended complaint, Doc. 61, and several months later one was filed, Doc. 65. The second amended complaint has three "counts," but it actually sets forth only a single claim—that certain contribution limits in the Act are unconstitutional under the First and Fourteenth Amendments—and seeks a declaratory judgment to that effect and an injunction against the enforcement of those limits. *See NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("different legal theories … do not multiply the number of claims for relief"); *Kauffman v. Pa. Soc'y for the Prevention of Cruelty to Animals*, 766 F. Supp. 2d 555, 560 (E.D. Pa. 2011) ("The relief a plaintiff seeks, and the claims he asserts, are thus conceptually distinct components of a complaint, and there is no need for a plaintiff to devote a separate count of a complaint to a request for a certain type of relief, as Kauffman does in seeking a declaratory judgment under Count I."); *Walker v. City of Detroit*, 2010 WL 4259835, at *1 (E.D. Mich. Oct. 25, 2010) ("While the court, technically, does not "dismiss" Counts XI and XII—for "punitive damages" and "attorney's fees"—those counts are not separate causes of action, as they are forms of potential relief to the other six counts."). Defendants have moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6). Doc. 77. For the following reasons, the motion is granted in part and denied in part.

## Background

In considering the motion to dismiss, the court assumes the truth of the second amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d

630, 632 (7th Cir. 2012). The court must also consider "documents attached to the [second amended] complaint, documents that are critical to the [second amended] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The facts are viewed as favorably to Plaintiffs as those materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Most of the relevant background is set forth the court's prior opinion, 902 F. Supp. 2d at 1116-19, familiarity with which is assumed. A third plaintiff newly named in the second amended complaint, Kyle McCarter, serves in the Illinois State Senate and will run for reelection in the 2013-2014 election cycle. Doc. 65 at ¶ 8. As of January 1, 2013, the Act's contribution limits were adjusted slightly upward to account for inflation. Doc. 78 at 2 n.1; *see* State Board of Elections, State of Illinois, Contribution Limits Per Election Cycle (2013), *available at* http://www.elections.il.gov/Downloads/CampaignDisclosure/PDF/ContributionSummary.pdf. If the contribution limits were not in place, Illinois Liberty and Bachrach would contribute more to particular candidates than the allowable limits ($52,600 and $5,300, respectively), Bachrach would contribute more to Illinois Liberty than the allowable limit ($10,500), and McCarter would seek to raise funds and accept contributions in excess of those limits. Doc. 65 at ¶¶ 8, 38-46. The parties agree, Doc. 90 at 4, and the court concurs, that Plaintiffs have standing to challenge the Act's limits on contributions to political action committees ("PACs") and candidates and contributions from PACs, individuals, and candidates. *See Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 146-48 (7th Cir. 2011).

## Discussion

The second amended complaint largely reasserts the constitutional challenges previously held by the court to have a low chance of success. 902 F. Supp. 2d at 1118-26. Specifically, Plaintiffs again claim that the Act violates the First Amendment and the Equal Protection Clause by exempting political parties from the contribution limits that apply to PACs and individuals, by lifting contribution limits in races where a self-funding candidate or independent expenditure committee spends over a particular threshold, and by imposing lower contribution limits on PACs than are imposed on corporations, labor unions, and other organizations. *Compare* Doc. 65 at ¶¶ 20-71 *with* Doc. 27 at ¶¶ 17-68. The court's assessment of those claims at the preliminary injunction stage was interlocutory and susceptible to revision. *See AlliedSignal, Inc. v. B.F. Goodrich Co.*, 183 F.3d 568, 573-74 (7th Cir. 1999). That said, having reviewed once again the challenged provisions and the governing precedents, the court adheres to and adopts its previously expressed view that the First Amendment and equal protection claims expressly considered at the preliminary injunction stage are without merit.

The court will briefly consider three arguments that Plaintiffs make in connection with those previously addressed claims. First, Plaintiffs contend that *Buckley v. Valeo*, 424 U.S. 1 (1976), erred in applying "less-than-strict scrutiny" to First Amendment challenges to contribution limits. Doc. 87 at 10. As Plaintiffs recognize, however, Supreme Court precedent holds that the "closely drawn" standard, not strict scrutiny, governs such challenges. *See FEC v. Beaumont*, 539 U.S. 146, 162 (2003); *Buckley*, 424 U.S. at 25. And Plaintiffs further recognize, correctly, that this court is bound by Supreme Court precedent. *See Khan v. State Oil Co.*, 93 F.3d 1358, 1363 (7th Cir. 1996) ("the Supreme Court has told the lower federal courts, in increasingly emphatic, even strident, terms, not to anticipate an overruling of a decision by the

Court; we are to leave the overruling to the Court itself”), *vacated on other grounds, State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) (“it is this Court’s prerogative alone to overrule one of its precedents”). Plaintiffs’ challenge to governing precedent is preserved for purposes of appellate review.

Second, Plaintiffs argue that the passage from *Davis v. FEC*, 554 U.S. 724 (2008), cited and quoted by this court in rejecting at the preliminary injunction stage Plaintiffs’ challenge to the Act’s waiver provisions, 902 F. Supp. 2d at 1124-25, was “dicta” unnecessary to the holding of *Davis*. Doc. 87 at 16-17. It is not at all clear that the pertinent passage from *Davis*—which is two paragraphs long and definitively concludes, with a reasoned explanation, that a waiver provision materially identical to the waiver provision challenged here would survive constitutional attack—was dicta. But even if it were dicta, this court would follow it. *See Barber v. City of Chicago*, 725 F.3d 702, 710 (7th Cir. 2013) (“While [the Supreme Court’s] explanation was dicta, it was dicta of the strongest kind, as it came from the Supreme Court and was firmly rooted in logic.”); *McBride v. CSX Transp., Inc.*, 598 F.3d 388, 405 (7th Cir. 2010) (“we must treat with great respect the prior pronouncements of the Supreme Court, even if those pronouncements are technically dicta”).

Third, Plaintiffs argue that the motion to dismiss should be denied because it “does not … and could not [] present any evidence to show that the Act’s limits serve a legitimate purpose” or “that the limits are … closely drawn to limit actual or apparent corruption.” Doc. 87 at 5, 12. The court need not take evidence to resolve the challenges considered at the preliminary injunction stage. Supreme Court precedent conclusively establishes that appropriate limitations on campaign contributions advance the government’s interest in preventing *quid pro quo* corruption or the appearance thereof. *See Citizens United v. FEC*, 558 U.S. 310, 357 (2010);

*Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 390-93, 397 (2000); *Buckley*, 424 U.S. at 26-27. And Supreme Court precedent likewise establishes that the challenges considered at the preliminary injunction stage and renewed here are without merit because the limitations in question are closely drawn to advance that interest. 902 F. Supp. 2d at 1120-26. There would be no point to the parties developing and court considering evidence on those matters.

The second amended complaint does present a challenge that the first amended complaint did not press, that the preliminary injunction motion did not mention, and therefore that the court's preliminary injunction ruling did not consider—that the Act is unconstitutional because it classifies legislative caucus committees as political party committees and thereby treats them more favorably than PACs, corporations, and individuals, when in fact there is no valid basis for giving them favorable treatment. Doc. 65 at ¶¶ 31-37, 51-54, 66. The Act defines a "legislative caucus committee" as "a committee established for the purpose of electing candidates to the General Assembly by the person elected President of the Senate, Minority Leader of the Senate, Speaker of the House of Representatives, Minority Leader of the House of Representatives, or a committee established by 5 or more members of the same caucus of the Senate or 10 or more members of the same caucus of the House of Representatives." 10 ILCS 5/9-1.8(c). The Senate President and the House Speaker are elected by the membership of the Senate and House, respectively, and the two Minority Leaders are "member[s] of the numerically strongest political party other than the party to which the Speaker or the President belongs" and are elected by such membership. ILL. CONST. art. IV, §§ 6(b)-(d). The Act classifies legislative caucus committees as a type of political party committee, 10 ILCS 5/9-1.8(c), and subjects legislative caucus committees to the same restrictions as those imposed on political party committees, 10 ILCS 5/9-8.5.

The second amended complaint alleges that the Act's favorable treatment of legislative caucus committees is improper because "unlike political party committees, whose primary purpose is to simply elect candidates to office, legislative caucus committees manage the institutional authority provided to the legislative leaders who create them and also play a crucial role in the legislative policymaking process." Doc. 65 at ¶ 32. According to Plaintiffs, legislative caucus committees allow legislative leaders to access "special fundraising channels and advantages over other speakers … in contravention of the limits that apply to others, including Plaintiffs." *Id*. at ¶ 33. As an exhibit to the second amended complaint, Plaintiffs attach a lengthy expert report by Dr. Marcus Osborn. Doc. 65-6. Dr. Osborn's report opines, among other things, that legislative caucus committees are unlike political party committees, "whose exclusive purpose is to simply elect candidates to office," that legislative caucus committees constitute "personalized political action committees" that are "designed to enhance [] the influence of their leaders as policymakers inside of the legislative body," and therefore that legislative caucus committees "should be treated differently than political party committees." *Id*. at 3, 6. The fact that legislative caucus committees are treated more favorably than PACs, Plaintiffs submit, violates Illinois Liberty PAC's rights because it can contribute less to candidates than legislative caucus committees may contribute, and also McCarter's rights because he wishes not to be dependent on legislative caucus committees and instead would prefer to receive money from individuals and groups independent of legislative caucus committees and political parties. Doc. 65 at ¶¶ 39, 41-43, 45; Doc. 87 at 3-5.

It is far from clear that Plaintiffs' challenge to the Act's favorable treatment of legislative caucus committees will succeed. Because they are elected and supported by their respective caucuses, which in turn are clearly identified with their political parties, the four legislative

caucus leaders—the House Speaker, the Senate President, and the two Minority Leaders—must maintain the broad-based support of their respective political parties. This almost certainly means that the legislative caucus committees headed by those four leaders are institutionally designed to advance their respective political parties' candidates. The other legislative caucus committees—those established by five or ten members of the same caucus of the Senate or House, respectively—likewise almost certainly, if not invariably, would support candidates of their members' political parties. *See* S. 96-71, Reg. Sess. No. 71, at 46 (Ill. 2009) (statement of Sen. Harmon) (observing in defense of the Act's treatment of legislative caucus committees: "I don't think anyone on your [Republican] side of the aisle is going to throw over one of your own Members in favor of a Democrat. I think the same is true for us.").

Like the Act, federal campaign finance law treats congressional campaign committees, the federal analog to legislative caucus committees, as political party committees. *See* 2 U.S.C. § 441a(d)(4)(B) (imposing on "all congressional campaign committees" the same expenditure limitations imposed on "political committees established and maintained by a national political party"); 2 U.S.C. § 441i (same for soft money restrictions); 2 U.S.C. § 434(e) (same for reporting requirements). The District Court for the District of Columbia has observed that "[t]he primary purpose of the congressional committees is to ensure the election of candidates from their respective parties to their respective legislative body and otherwise support the goals of their party." *McConnell v. FEC*, 251 F. Supp. 2d 176, 468 (D.D.C. 2003), *aff'd in part and rev'd in part on other grounds*, 540 U.S. 93 (2003), *overruled in part on other grounds*, *Citizens United*, 558 U.S. 310. The Supreme Court has likewise recognized the structural ties that congressional campaign committees have to their respective political parties. *See FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 40 n.20 (1981) (finding "minimal" doubt that 2

U.S.C. § 441a(a)(4), which applies to "political committees which are national, state, district or local committees (including any subordinate committee thereof) of the same political party," encompasses congressional committees, in part because of "the fact that senatorial campaign committees are identifiable as part of their respective party"). There is little reason to doubt that these observations almost certainly apply with equal force to legislative caucus committees at the state level. *See* CONN. GOV'T, ADMIN. AND ELECTIONS COMM. TRANSCRIPT (Mar. 11, 2002) (statement of Jeffrey Garfield, Executive Director and General Counsel for the State Elections Enforcement Commission) (analogizing between state legislative caucus committees in Connecticut and "the four Congressional campaign committees").

Although the court strongly suspects that legislative caucus committees are sufficiently similar to political party committees for purposes of constitutional analysis, and therefore that the Act's treatment of legislative caucus committees is permissible, the court is not in a position to definitively reach that conclusion at this point. The reason is that the considerations set forth in the prior two paragraphs were not presented in Defendants' briefs, except at the most general level and in passing, which means that Plaintiffs have not had a fair opportunity to provide a contrary view. *See United States v. Cronic*, 466 U.S. 648, 655 (1984) ("'[T]ruth,' Lord Eldon said, 'is best discovered by powerful statements on both sides of the question.'") (alteration in original); *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992) (noting the importance of the district judge giving a party the ability to address a line of argument raised by the judge and not presented by the other side). Nor do Defendants address whether and, if so, how Dr. Osborn's report affects the Rule 12(b)(6) analysis. For now, then, Plaintiffs' challenge to the Act's treatment of legislative caucus committees survives and awaits consideration on a more complete record and with the benefit of a focused presentation from both sides.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The motion is denied with respect to Plaintiffs' challenge to the Act's treatment of legislative caucus committees. The motion is granted with respect to Plaintiffs' other challenges. The dismissal of those other challenges is with prejudice for two reasons. First, repleading would be futile because those challenges, however they might be pleaded, are foreclosed by binding precedent. *See Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012) ("District courts have broad discretion to deny leave to amend … where the amendment would be futile."); *Estrada v. Reed*, 346 F. App'x 87, 89-90 (7th Cir. 2009) (affirming the district court's denial of "a futile amendment" where the plaintiff could not state a viable constitutional claim). Second, Plaintiffs did not request an opportunity to replead in the event the court dismissed any of their challenges. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not request leave to amend). Defendants shall answer the surviving portions of the complaint by March 24, 2014.

March 3, 2014

United States District Judge